Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

# UNITED STATES DISTRICT COURT

### for the

District of _____ Colum ▾

_____ Civil _____ Division

| | | |
|---|---|---|
| Lisa K Holden | ) | Case: 1:19-cv-03057  JURY DEMAND |
| | ) | Assigned To : Jackson, Ketanji Brown |
| | ) | Assign. Date : 10/6/2019 |
| _____ | ) | Description: Pro Se Gen Civ. (F-DECK) |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | Jury Trial: *(check one)* ☑ Yes ☐ No |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| **-v-** | ) | |
| Williams & Connolly LLP | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |

## COMPLAINT FOR A CIVIL CASE

I.    **The Parties to This Complaint**

   A.    **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Lisa K Holden |
| Street Address | 720 North Carolina Avenue, SE |
| City and County | Washington, DC |
| State and Zip Code | DC 20003 |
| Telephone Number | 202-823-2692 |
| E-mail Address | 55649604z@gmail.com |

   B.    **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known).* Attach additional pages if needed.

Defendant No. 1

Name      Williams & Connolly LLP

Job or Title *(if known)*      Plan Administrator and  Fiduciary

Street Address      725 12th Street, NW

City and County      Washington, DC

State and Zip Code      20005

Telephone Number      202-434-5000

E-mail Address *(if known)*      jscott@wc.com

Defendant No. 2

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 3

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

Defendant No. 4

Name

Job or Title *(if known)*

Street Address

City and County

State and Zip Code

Telephone Number

E-mail Address *(if known)*

## II.     Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction?  *(check all that apply)*

☑ Federal question                    ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A.     If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.
29 USC Section 1140 (ERISA 510) - Interference With Protected Rights
Wrongful Discharge in Violation of Public Policy - DC Code Sec 32-1542; DC Code 32-1103; DC Code Ann. Section 12-301 (8); ERISA, 29 USC, Section 1001 et seq.; FMLA Section 825.207; 29 CFR Section 825.212;

### B.     If the Basis for Jurisdiction Is Diversity of Citizenship

1.     The Plaintiff(s)

   a.     If the plaintiff is an individual

   The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

   b.     If the plaintiff is a corporation

   The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,

   and has its principal place of business in the State of *(name)*

   _____.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.     The Defendant(s)

   a.     If the defendant is an individual

   The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

      b.      If the defendant is a corporation

            The defendant, *(name)* _____, is incorporated under

            the laws of the State of *(name)* _____, and has its

            principal place of business in the State of *(name)* _____.

            Or is incorporated under the laws of *(foreign nation)* _____,

            and has its principal place of business in *(name)* _____.

            *(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

     3.      The Amount in Controversy

            The amount in controversy–the amount the plaintiff claims the defendant owes or the amount at stake–is more than $75,000, not counting interest and costs of court, because *(explain)*:

## III.   Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

See attached.

## IV.   Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

See attached.

## V.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:            10/06/2019

Signature of Plaintiff           *Lisa K Holden*
Printed Name of Plaintiff        Lisa K Holden

### B.     For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

## III. Statement of Claim

Defendant created an extremely hostile work environment that Plaintiff
could no longer contend with when she went out sick with depression
and anxiety. Defendant was not happy that Plaintiff chose to seek
long-term disability benefits, but decided they could use FMLA to
their benefit to avoid any increased costs. As a result, Plaintiff
suffered interference and retaliation from her employer, thus
causing her to lose her long-term disability coverage, her long-term
disability benefits, and her employment. Employer added new plan
amendments to the existing long-term disability insurance plan, in
one case retroactively activating the change by several years, but in
each case failing to distribute the new changes/amendments to plan
participants prior to enforcing said amendments, and deliberately
concealing the new modification of one new amendment from Plaintiff,
which would later cause Plaintiff to lose her long-term disability
coverage at the end of her FMLA period, which was also never properly
recognized or approved of by Plaintiff's employer despite Plaintiff's
written request for such.

Plaintiff's employer then discharged Plaintiff five days after
Plaintiff's claim for long-term disability benefits was denied by the
insurance provider, UNUM, despite the fact that UNUM had earlier acknow-
ledged Plaintiff's disability and said denial being based only on the
new expiration clause amendment in Plaintiff's employer's LTD insurance
plan, surreptitiously and retroactively imposed and withheld from
Plaintiff until discovered as the explanation for coverage denial in
the insurance provider's denial letter to Plaintiff.

Having succeeded in undermining and blocking Plaintiff's efforts to
attain her long-term disability benefits, Defendant then hastily
terminated Plaintiff's employment, a twenty-year long employee of
Defendant's law firm, so as to prevent Plaintiff from being recognized
at her upcoming twenty-year anniversary award celebration at which
Plaintiff should have been honored for her dedicated service to her
employer.

Not only was Plaintiff prevented from reaching her twenty-year
anniversary with the firm, but more importantly, when Plaintiff
was hastily fired on October 5, 2016 without the long-term disability
benefits that she had been seeking to attain; now she would no longer
be able to further pursue those benefits wrongly denied her. UNUM told
the Plaintiff that she could have reapplied for those benefits had she
not been terminated by the Defendant.

Plaintiff is claiming wrongful discharge in violation of public policy
as a result of having had to file both internal and external inquiries
and/or complaints in the prior three years. Also, it goes against
public policy to have an employer interfere with protected activities
in any way, such as to interfere with an employee who is attempting
to gain an ERISA benefit to which they were entitled.

IV. Relief

The claims alleged in this complaint are continuing to this day.
The Plaintiff has lost a benefit in the Williams & Connolly LLP
Long-Term Disability Plan, the benefits of which have a value of
$1.37M. The Extension Benefit for Health Insurance that the
Plaintiff would have been entitled to if her disability benefit
had been approved amounts to $56.6K.

Plaintiff is seeking the following damages for the interference
and retaliation experienced:

ERISA Interference - Failure to Maintain Long-Term Disability
Insurance Coverage Through Interference, Damages equal $1.37M;

ERISA Retaliation - Wrongful Discharge in Violation of Public
Policy, Damages equal $1.37M;

ERISA Interference ¬ùFailure to Provide Healthcare Benefit
Extension for Family Coverage For Long-Term Employees Due To
Interference With ERISA benefits. Damages equal $56.6K.

Punitive damages are sought at an amount agreed upon by the jury.
Plaintiff believes that there has been intentional infliction of
emotional distress and she and her family have suffered greatly
through this ordeal.

Lisa Holden, Pro Se
720 North Carolina Avenue, SE
Washington, DC 20003
202-823-2692

## UNITED STATED DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LISA K. HOLDEN, | ) | Case No.; Number _____ |
| **Plaintiff**, | ) | |
| | ) | |
| **vs**. | ) | |
| | ) | |
| WILLIAMS & CONNOLLY LLP, | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

---

## ERISA Section 510 Interference and Retaliation Complaint

COMES NOW, Plaintiff, Lisa K. Holden, and makes the following representations to

the Court for the purpose of obtaining relief from Defendant's interference and retaliation with

Plaintiff's rights under the Employee Retirement Income Security Act of 1974 ("ERISA"):

## JURISDICTION AND VENUE

1. This Courts' jurisdiction over the Plaintiff's claim for relief from Interference and

Retaliation with Protected Rights is invoked under the federal question jurisdiction

found in the ERISA statute under 29 U.S.C. Section 1140 (ERISA Section 510).

Plaintiff's claims "relate to" an "employee welfare benefits plan" as defined by

ERISA, 29 U.S.C. Section 1001 et seq. and the subject long-term disability policy and

health plan constitutes "plans under ERISA." The statute of limitations is three years.

There is also a claim for the tort of Wrongful Discharge in Violation of Public Policy

(D.C. Code Ann. Section 12-301) which carries a three-year statute of limitations in

the District of Columbia. The letter of termination from the Defendant to the

Plaintiff was dated 10/5/16 and received by Plaintiff on 10/6/16; therefore, the

statute of limitations expires on 10/6/19.

## PARTIES

2. Plaintiff, LISA HOLDEN (hereinafter "Plaintiff"), is an individual who is currently and

was at all relevant times herein a resident of the city of Washington, DC.

3. Defendant, WILLIAMS & CONNOLLY LLP, THE PLAN ADMINISTRATOR FOR THE

BENEFITS PLAN (Cafeteria Plan) AND PLAN SPONSOR AND FIDUCIARY OF THE

WILLIAMS & CONNOLLY LLP GROUP LONG-TERM DISABILITY (LTD) PLAN AND WILLIAMS &

CONNOLLY LLP UNITED HEALTHCARE CHOICE PLUS 100/80 PPO HEALTH PLAN,

(hereinafter "Defendant"), is a Limited Liability Partnership organized and existing by

virtue of the laws of the District of Columbia, and may be served with process by

service upon Williams & Connolly LLP, located at 725 12th Street, NW, Washington,

DC 20005, ATTN: Jennifer Scott, Executive Director.

4. All of the acts/and or failures to act alleged herein were duly performed by and/or

are attributable to defendant, individually or acting by and through its fiduciary

agents.

5. Said acts and/or failures to act were within the scope of any agency or employment,

or were ratified by defendants.

## II. FACTS

6. Plaintiff is former Deputy Director of Finance of Williams & Connolly LLP (Defendant)

and was employed by Defendant for 19 ½ years.

7. Defendant Williams & Connolly LLP is a limited liability partnership performing legal

services located at 725 12th Street, NW, Washington, DC 20005.

8. Plaintiff's early career began as an Auditor working for one of the "Big Eight"

Accounting firms, later she was a Senior Accountant at a Financial Services

Consulting Firm and then accepted a position as the Assistant Controller for Defendant's

law firm on March 24, 1997. Plaintiff was promoted to the position of Deputy

Director of Finance on or around January 1, 2005. Plaintiff's role as the Deputy

Director of Finance included overseeing Accounts Payable, overseeing Financial

Reporting, overseeing and handling the Annual Review and Retirement Plan Audits,

acting as the Tax Manager for the firm, as well as acting as the Retirement Plan

Manager for five qualified retirement plans and one non-qualified unfunded

retirement plan. Plaintiff's role as the Retirement Plan Manager started in March 2009 and

created an overwhelming and intolerable work situation when combined with all of

the other work responsibilities and managerial duties that Plaintiff was already

handling. Plaintiff endured this situation for over six years before seeking to take leave

based on suffering high levels of anxiety and depression accumulating over the years.

Plaintiff's health began to experience decline in 2009, but she continued to work through

her tasks and responsibilities despite the setbacks.

9. Plaintiff's claims are for Interference and Retaliation under Section 510 of ERISA by

the Defendant. Plaintiff, a long-term employee of the Defendant, has been seeking

to attain a benefit in the disability plan since 8/15/15 and due to interference and

retaliation has not been able to establish the benefit even though Plaintiff's long-term disability

insurance provider, UNUM, confirmed Plaintiff's disabling condition as early as

July 2016. Despite Plaintiff's long-term disability insurance premiums having been paid on a

consistent and continual basis, UNUM claimed that Plaintiff had an insurance

coverage issue.

10. The claim of interference results from the various actions taken by Defendant in its

fiduciary capacity, such as Defendant's Intentional Failure to Maintain Long-Term

Disability Coverage as Required in the 2008 Distributed Plan, which was the plan distributed to

Plaintiff in 2013 and was represented by Defendant as the only plan available at that time.

This failure resulted in denial of Plaintiff's benefits in the Williams & Connolly LLP Group Long-

Term Disability Plan while Plaintiff was on medical leave, and a subsequent plan, created after

2008 but never distributed to Plaintiff as required nor acknowledged by Defendant when

providing Plaintiff a copy of the then current plan in November 2013, includes a clause that

required benefits to end upon Plaintiff's FMLA end date.

11. Defendant interfered with Plaintiff's Two Year Extension Benefit for Health Insurance.

Despite appearing to qualify for the benefit based upon statements in The Williams & Connolly

LLP Benefits Plan, Defendant now informs Plaintiff that there is a clause in the Employee

Handbook which is not available to Plaintiff, stating that employees must have been

determined to have a long-term disability and to have entered into LTD status, but which

Defendant, through questionable and nefarious means, successfully prevented Plaintiff from

attaining.

Because of earlier interference from Defendant, Plaintiff's long-term disability benefit was never approved and Plaintiff is made to forgo the additional benefit under the plan despite Plaintiff suffering from a disability, as determined by Defendant's own insurance provider in July 2016.

12. This claim includes retaliation resulting in a Wrongful Discharge for Violating Public Policy, which caused Plaintiff to not be able to submit a new claim for long-term disability benefits and denied Plaintiff of other benefits to which she had been assured throughout her working career, including her employment with Defendant.

13. Plaintiff suffered a severe disability, but could not secure the coverage promised her as it was denied due to Defendant's surreptitious manipulations of long-term disability insurance plan amendments, designed to prevent Plaintiff from reapplying for long-term disability benefits and then seeking to take further advantage of the opportunity by terminating Plaintiff's employment. Each of these acts will be described in more detail below.

14. Plaintiff was employed by Defendant for 19 ½ years, and while employed as the Deputy Director of Finance for Defendant was often recognized for her hard work, dedication and loyalty to her employer.

15. As the twenty-year anniversary of Plaintiff's tenure with her employer was drawing near, it became increasingly clear that Defendant's new management was not as pleased by Plaintiff's dedication to her work and the work environment was becoming increasingly more hostile. As a result of the increasingly hostile work environment Plaintiff was forced to seek relief and tried

to avail herself the benefits assured her through her employer's Employee Welfare Benefits Plans, established through ERISA and the Department of Labor.

16. On August 26, 2015 Plaintiff submitted to Defendant the completed paperwork necessary for requesting FMLA and, although Defendant has suggested that Plaintiff partake of FMLA, Defendant has yet to provide Plaintiff the required written authorization confirming and agreeing to the request for FMLA.

17. Section 510 of ERISA, 29 U.S. C. Section 1140, makes it unlawful for "any person" to discriminate or retaliate against a participant or beneficiary for exercising rights under an ERISA plan. It also prohibits interference with the attainment of a right to which a participant may become entitled under the plan.

18. The Industrial Relations Law Journal, Volume 10, dated 1988 and entitled "ERISA Section 510 – A Further Limitation on Arbitrary Discharges" states "In passing section 510, Congress intended to protect employees from being discharged by employers seeking to reduce their pension and benefit costs. This general goal is laudable and was necessary in the face of evidence that employees were subject to arbitrary discharge despite long years of service and developed expectations of receiving continued benefits through their continued Employment…" "In sum, arbitrary discharges – which are difficult to justify in any context – must not operate to deprive an employee of a hard-earned benefit or pension. Allowing such interference in vested benefit and pension rights would frustrate the laudable goals of section 510."

19. Plaintiff alleges that, as the primary breadwinner for her family of four and with two children in school at the time, she developed even more severe anxiety upon learning that her initial claim for long-term disability was disapproved on January 8, 2016 because UNUM did not understand the mental health conditions Plaintiff was experiencing. Plaintiff's loss of income caused her to become even more distraught and extremely depressed.

20. Plaintiff's July 28, 2016 discovery of evidence indicating that her personal computer had been compromised and her personal activities were being monitored only served to mirror a declaration made by her boss, Mr. I.P. Barlow, during the last few years of employment with Defendant, wherein Mr. Barlow revealed that Plaintiff's daily activities were being closely watched and monitored.

21. Devastated over the discovery that her computer had been compromised, and experiencing severely increased trauma as a result, Plaintiff ended up being hospitalized for nearly two weeks in the Washington, D.C. George Washington University Hospital, from August 3, 2016 until August 15, 2016. The cost of Plaintiff's twelve days of hospitalization exceeded $40,000 and, of course, these costs were being borne by the Defendant's self-insured health plan.

22. Defendant further interfered with Plaintiff's procurement of her long-term disability coverage, along with other employee benefits, by surreptitiously inserting and backdating a new FMLA clause in Defendant's long-term disability insurance plan during a time when Plaintiff was theoretically on FMLA, and which new amendments include the cancellation of long-term disability coverage and of life insurance coverage for any participant reaching the "end date" of

their FMLA. Defendant claims the recent changes, which were only fully revealed to Plaintiff in 2019, had at some point been made a part of Defendant's long-term disability insurance plan with an effective date in 2010. However, when Defendant provided Plaintiff a copy of the plan in late 2013 and represented at the time that it was Defendant's only long-term disability insurance plan in effect, these recently discovered "2010" changes were not reflected in the plan, which included only adjustments made to the plan through 2008.

23. Despite Defendant's lack of proper written authorization and/or approval of Plaintiff's request for FMLA, and the fact that Defendant continued to make the required monthly premium payments for Plaintiff's long-term disability insurance on behalf of Plaintiff and without ever acknowledging the existence of a new "FMLA end-date" clause purported to having been added and made a part of the long-term disability plan in 2010, any changes which may have been made to Defendant's long-term disability insurance plan in 2010 but which Plaintiff was not made aware of and Defendant did not even acknowledge shows both a lack of integrity on Defendant's part, as well as Defendant's apparent true intentions in regards to this matter. It appears that Defendant has attempted to manipulate the employment benefit plan and any related coverage of such in order to deny Plaintiff the very benefits into which Plaintiff should be assured through Defendant's fiduciary responsibilities to Plaintiff. It also appears that any changes to Defendant's 2008 long-term disability Insurance plan should not be considered enforceable on the Plaintiff, as notification of the changes to the plan were not properly distributed to the plan's participants, in violation of DOL and ERISA rules and regulations.

24. Plaintiff contends that by way of deliberate interference, Defendant caused the following **breaches of fiduciary duties** which have caused great harm to the Plaintiff:

a. Failure to inform of new plan changes that has caused Plaintiff to suffer a material reduction in benefits subsequent to the 2008 plan for which she was provided in 2013. It should be noted that Defendant consistently does not provide summary plan descriptions to participants on the DOL schedule;

b. Improperly executed amendment: It appears that the Plan Administrator allowed a plan amendment prepared after 2013 to be made retroactive to 2010 which would not be in accordance with DOL guidelines. In late 2013, the Benefits Administrator gave Plaintiff a copy of the 2008 and told Plaintiff that that was the most recent long-term disability plan.

c. Failure to properly designate FMLA leave according to FMLA guidelines before using it as a trigger to end benefits in the Williams & Connolly Group Long-Term Disability Plan;

d. Agreement with UNUM to rescind Plaintiff's long-term disability insurance coverage on 9/28/16 based upon two improperly handled amendments just two days before Plaintiff would have been approved in the Williams & Connolly LLP Group Long-Term Disability Plan, but for this action;

e. Failure to maintain the long-term disability coverage of Plaintiff according to the last known policy;

f. Failure to provide Plaintiff with the two year extension benefit for health insurance;

g. Failure of Defendant to clearly define the methodology and procedures for their preparation of amendments.

h.  Failure to follow the Prudent Man Theory which is clearly spelled out in the Williams & Connolly LLP Group Long-Term Disability Plan agreement from 2008 through the plan made effective in 2014 which states that the plan follows Prudent Actions by Plan Fiduciaries and states the following: "In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan participants and beneficiaries. No one, including your Employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a benefit or exercising your rights under ERISA." Sadly, Williams & Connolly LLP did not follow their own best advice in my case.

25. RETALIATION CLAIM: Plaintiff suffered a "Wrongful Discharge in Violation of Public Policy" on 10/5/16, due to Retaliation for Plaintiff's continuing to make a claim for long-term disability benefits and having made a large medical claim during an August 2016 hospitalization after learning that her computer is being monitored, and was informed of that termination decision on 10/6/16. As we discussed before, Defendant includes the Prudent Man Theory as one of their tenets, yet, this was exactly what happened to Plaintiff. Plaintiff was fired to prevent her from obtaining a benefit. Plaintiff suggests that we need to hold business accountable for their actions and not let them just use statements like the Prudent Man Theory as a cover for nefarious actions. Below is a listing of Matters of Public Policy that would have likely had an impact on the Defendant's decision making as they sought to retaliate. **The Prima Facie Case for Retaliation is as follows:** 1) Plaintiff was the Deputy Director of Finance at Williams &

Connolly LLP for over 19 ½ years. Plaintiff engaged in the following protected activities while employed which are considered matters of public policy:

2) Plaintiff engaged in the following matters of protected acts and matters of public policy:

a. A Matter of Public Policy – Internal Inquiry Regarding a Possible ERISA Violation; In November 2013, Plaintiff inquired of the Human Resources Department about a possible ERISA Section 125 violation and an HR employee confirmed the situation that Plaintiff knew would result in an ERISA violation. Plaintiff discussed with HR what they should do immediately to remedy the situation and they said that they would take care of it.  Soon after, Plaintiff believes the company changed her employment status in response to her inquiry. When Plaintiff asked for a copy of the new document that was put in place to correct what would have been a violation of ERISA, Plaintiff's boss told her that she could not see a copy of the document because "That would be like pulling HR's pants down."

b. A Matter of Public Policy – Defendant's Violation of Family and Medical Leave Act regulations;  Plaintiff engaged in the pursuit of her FMLA Rights beginning on August 13, 2015, but never received approval by way of a Designation Notice or a Retroactive Designation Notice; never received a General Notice, never received a Rights & Responsibilities Notice, never received a written leave agreement and never received notice of a new plan amendment with a FMLA clause causing a material reduction in benefits which Defendant added retroactively (going back several years) in the Long-Term Disability Plan which allows for an end date or a drop-dead date for all insurance benefits on the last day of FMLA leave. Plaintiff was not informed of the FMLA clause as part of the FMLA onboarding process. Additionally, around

November 2015 and during Plaintiff's requested FMLA leave, Plaintiff inquired of Defendant's

Benefits Administrator, Laurie, whether Plaintiff could elect to use her remaining vacation pay

as paid leave when other paid leave is exhausted. Ms. Jackson responded that It is not a policy

of the firm to allow such, and Defendant must hold the pay until termination of Plaintiff's

employment, in violation of FMLA regulations Section 825.207 re: Substitution of Paid Leave,

FMLA law permits an employee to elect to use accrued paid vacation leave under Section

825.207 Substitution of Paid Leave.

c. A Matter of Public Policy – Threatened Wrongful Discharge in Violation of Public - In June

2016, Defendant's Benefits Administrator, Ms. Jackson, attempted to create a COBRA-qualifying

event, in violation of COBRA rules, when Plaintiff was late making her monthly healthcare

premium payment. Defendant's Benefits Administrator stated that if Plaintiff was unable to

make the payment within 13 days, Defendant would terminate Plaintiff's employment and

substitute Plaintiff's healthcare insurance with a COBRA plan. It is a violation of COBRA for an

employer to terminate an employee due to that employee's inability to make a timely

healthcare premium payment, or for the employer to threaten to drop their employee's

healthcare insurance and require the employee to accept a COBRA plan. If an employee is

unable to make timely healthcare premium payments, the employer may cancel the

employee's coverage, or make payments for the employee and seek recovery of funds at a later

time, but it is a violation of COBRA to terminate an employee simply because they are unable to

make their healthcare insurance premium payments. See 29CFR Section 825.212-Employee

failure to pay health plan premium payments.

d. A Matter of Public Policy – Interference with Protected Rights of Health Insurance under the Affordable Care Act (ACA) and Employee Retirement Income Security Act of 1974 (ERISA). Plaintiff filed a significant healthcare claim of over approximately $40K in August 2016 following a nearly two week long hospitalization related to Plaintiff's mental health disorder. These claims were payable by Defendant's self-insurance.

e. A Matter of Public Policy – Interference with Protected Rights of Long-Term Disability Insurance – Plaintiff filed a significant claim for long-term disability benefits under the Williams & Connolly LLP Group Long-Term Disability Plan and under the laws of ERISA 29 U.S. Code Section 1140. Plaintiff was denied long-term disability coverage a second time on 9/30/16. (Interference with protected rights state the following: It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.) Plaintiff filed claim for Short-Term and Long-Term Disability Benefits beginning in August 2015; Plaintiff's claim for short-term disability benefits was approved three Times; September 2015, October 2015, and November 2015. Plaintiff's claim for long-term disability benefits was denied on 1/8/16 for medical reasons and was denied again on 9/30/16 for lack of coverage. Plaintiff was told that UNUM did find disability or impairment in 7/2016.

e. A Matter of Public Policy – Interference with Protected Rights of Extension of Healthcare

Benefits under the Affordable Care Act and ERISA 510 – Defendant has denied Plaintiff's

Extension of Healthcare Benefits under the United Healthcare Choice Plus 100/80 PPO Group

Health Plan despite Plaintiff meeting all of the qualifications as noted in the Benefits

Plan, but Defendant alleged that benefits are only due once Plaintiff receives approval for Long-

Term Disability benefits and is placed in LTD status.

3) ADVERSE EMPLOYMENT ACTION: Wrongful Discharge in Violation of Public Policy, The

protected activities listed above were the causal reason for the "Wrongful Discharge in

Violation of Public Policy. As a result of a wide array of complicating factors, but mostly for

reasons related to the protected acts just mentioned such as making internal inquiries into

matters that the Defendant didn't want me to know about; and seeking FMLA and seeking

costly disability benefits, and incurring significant health costs in excess of $40K in the

Defendant's self-insured health plan while recovering from the trauma of discovering that her

personal computer had been compromised and that she was being monitored; Plaintiff found

herself suffering retaliation by the Defendant. Plaintiff believes that it was this retaliation that

caused her "Wrongful Discharge in Violation of Public Policy." The high medical costs and the

Defendant's self-insured plan as well as the substantial long-term disability costs which will

eventually show up in the Defendant's premium costs certainly play the biggest role from a

monetary standpoint and which would have likely caused the Defendant to make the rash

decision to terminate the Plaintiff immediately before she could complete the attainment of

her LTD benefit; but internal inquiries like the one described above seemed to cause a great

deal of fury and employers do seem to have very long memories. To show Defendant's

concerns over healthcare costs, every October or November at the time of Open Enrollment, the Defendant would send around a Benefits Renewal Information package with a cover memo discussing the next year's insurance offerings including a statement to the effect of we are offering a "benefits package that provides the healthcare protection you and your family need, while managing drastically increasing healthcare costs. The rising cost of healthcare is a national trend that is expected to continue for the foreseeable future, making the active involvement in managing your own personal health even more important for all of us." From this annual statement, you can see how important it is to the Defendant that employees keep medical costs down. A fiduciary acting in the best interests of a plan participant would not have pulled the rug out from underneath a person who is about to attain a needed benefit in one of their plans. It seems that Defendant had improper motives when Plaintiff was terminated in a hasty manner after being denied her disability benefits.

This retaliation from Plaintiff's employer was brought about simply because she used or attempted to use the benefits that they have voluntarily placed into an ERISA Employee Welfare and Benefits plan for their employees to use when needed. Plaintiff suffered disenfranchisement, interference, and retaliation at the hands of new members of Defendant's management team simply for continuing to perform the duties and responsibilities for which she had been hired, and ensure that the firm is compliant with current regulations, thus Plaintiff experienced and was subjected to the following adverse employment action:

Plaintiff's long-term disability coverage was rescinded on 9/28/16 and retroactively to 12/10/15 by agreement of UNUM and the Defendant, as a result of a new plan Amendment which Defendant successfully concealed from Plaintiff, a "FMLA clause," added to Plan Amendment

#18 and retroactively dated to 2010. Two days later, 9/30/16, UNUM wrote to Plaintiff denying

Plaintiff's disability benefits due to "lack of coverage." Five days later, October 5, 2016, Defendant mailed

a letter to Plaintiff which included termination of Plaintiff's employment with the firm, stating,

"We also understand that you are unable to return to work indefinitely," but not otherwise

addressing any other specifics. Had Plaintiff not been "Wrongfully Discharged in Violation of

Public Policy, she could have had the opportunity to reapply for the long-term disability

benefits. The Agent to the Plan Administrator at Williams & Connolly LLP made sure that this

didn't happen.

To show that cost savings was on the Defendant's mind, on September 19, 2016 only eleven

days before Plaintiff was denied LTD coverage a second time, Karen Gregory, the HR Director,

sent the Plaintiff an email telling her that as of June 1, 2016, the Defendant had changed their

non-ERISA benefits for any employee in LTD status. They removed benefits like vacation

accrual, CLE and service awards, etc. There was a major push to rein in any spending as it might

relate to Plaintiff's attempt to seek long-term disability and Defendant seemed to want to

ensure Plaintiff did not receive her 20 year service award of $20,000 even though she was

only six months away from it.

The plan amendment #19 appears to have been added and made effective on 6/1/14 for the

sole purpose of adding a new working arrangement between the Defendant and UNUM. The

Amendment #19 states on page B@G-LTD-3 (6/1/14) the following: "The plan includes

enrollment, risk management and other support services related to your Employer's Benefit

Program." Also, if UNUM and Defendant are now involved in a risk management agreement

and working closely together to strategize about ways to keep employees from getting their

benefits, it's hard to see how this act could be in the interest of participants and appears to be a

breach of fiduciary duty to even have such a set up. Setting up this new FMLA clause to cause a

drop dead date with the LTD benefit must have been one of UNUM's first recommendations to

Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant her the following relief in this

case: On Plaintiff's First Cause of Action:

1. A finding in favor of Plaintiff against the Defendant;

2. ERISA Interference Damages to recover for lost benefits in the Williams & Connolly LLP Group

Long-Term Disability Plan last distributed 2008 policy made available to Plaintiff in late 2013 in

the amount of $1,370,636;

3. ERISA 510 and the Affordable Care Act prohibit employer Interference and protect

participants rights and access to health insurance benefits under the UnitedHealthcare Choice

Plus 100/80 PPO Active Plan group health plan. Specifically, damages related to the Two Year

Extension of Health Benefits due from 8/1/2016 thru 7/1/18 equal $56,622.93;

4. ERISA Retaliatory Damages of $1,370,636 for the "Wrongful Discharge in violation

of Public Policy" to prevent Plaintiff from reapplying for long-term disability coverage and

attaining her long-term disability benefits since her disability had already been established by

UNUM and ;

5. Plaintiff also seeks punitive damages.

6. Damages for accrued interest have not yet been determined.

7. Total damages are estimated to be $2,797,894.93.


Respectfully submitted

BY: _Lisa K Holden_

Lisa Holden,


Lisa K Holden, Pro Se
720 North Carolina Avenue SE,
Washington, DC 20003
(202) 823-2692